UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TEFFONIE HIGGINS,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

                Defendant.

Case No. C16-5807-RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Teffonie Higgins seeks review of the denial of her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Ms. Higgins contends the Appeals

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

Council erred in failing to properly evaluate the post-hearing medical opinion of non-examining doctor Rox Burkett, M.D. Dkt. 11. Ms. Higgins also contends the ALJ erred in: evaluating the medical opinions of examining doctor Paul Kornberg, M.D. and treating doctor Kenneth M. Louis, M.D.; evaluating her own symptom testimony; and finding she could perform past work at step four as well as other work in the national economy at step five. *Id.* Ms. Higgins contends the ALJ should reverse and remand this case for an award of benefits or, alternatively, for further administrative proceedings. Dkt. 11 at 2. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

In May 2012, Ms. Higgins applied for DIB and in July 2012, applied for SSI. Tr. 26. Both applications allege disability as of January 3, 2012. Tr. 26. Ms. Higgins' applications were denied initially and on reconsideration. Tr. 26. After the ALJ conducted a hearing on January 12, 2015, the ALJ issued a decision finding Ms. Higgins not disabled. Tr. 26-40.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Higgins has not engaged in substantial gainful activity since January 3, 2012, the alleged onset date.

**Step two:** Ms. Higgins has the following severe impairments: degenerative disc disease of the cervical and lumbar spine (status/post cervical and lumbar fusion surgeries), osteoporosis of the hips and feet, and migraine headaches.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity (RFC):** Ms. Higgins can perform light work except she can never climb ladders, ropes or scaffolding. She can occasionally balance, stoop,

---
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

kneel, crouch, crawl, and climb ramps or stairs.  She can occasionally reach overhead bilaterally.  She should avoid working with vibrating tools, machines, and vehicles.  She should avoid hazardous working conditions, such as proximity to unprotected heights and moving machinery.  She is limited to occasional exposure to bright lights or loud noise.  She is limited to tasks that do not require looking overhead more than occasionally, or rotating her head more than 45 degrees.

**Step four:**  Ms. Higgins can perform past relevant work as a receptionist, data entry clerk, and police aide and, as such, she is not disabled.

**Step five:**  Alternatively, as there are jobs that exist in significant numbers in the national economy that Ms. Higgins can perform, including telephone information clerk, she is not disabled.

Tr. 26-40.  The Appeals Council denied Ms. Higgins' request for review making the ALJ's decision the Commissioner's final decision.  Tr. 1-6.[4]

## DISCUSSION

**A.     Medical Opinion Evidence**

The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996).  When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.*

*1.     Rox Burkett, M.D.*

Ms. Higgins contends the Appeals Council erred in failing to properly consider Dr. Burkett's April 2015 opinion in denying review of the ALJ's decision.  Dkt. 11 at 5-6.  The Court rejects this argument.

Dr. Burkett's opinion post-dates the ALJ's decision and was submitted for the first time to the Appeals Council by Ms. Higgins in requesting review of the ALJ's decision.  Tr. 575-79.

---

[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner. *Taylor v. Commissioner of Social Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Thus, the Court lacks jurisdiction to consider whether the Appeals Council properly considered Dr. Burkett's post-hearing opinion in denying Ms. Higgins' request for review. That said, where, as here "the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). However, Ms. Higgins also fails to establish Dr. Burkett's opinion substantially undermines the ALJ's decision.

First, Ms. Higgins makes no specific arguments to support the contention that Dr. Burkett's opinion undermines the ALJ's decision. It is Ms. Higgins' burden to establish error and in failing to make specific arguments identifying error on the part of the ALJ, she fails to meet this burden. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (the burden is on the party claiming error to demonstrate the error and that the error was harmful); *see Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 930 (9th Cir. 2003) (the court "will not consider any claims that were not actually argued in appellant's opening brief"). Second, even considering Dr. Burkett's opinion on its face, the opinion is not based on new evidence such as new medical records or Dr. Burkett's own examination of the claimant. Tr. 575-79. Rather, the opinion is rendered based upon a review of the record already before the ALJ. *Id.* As discussed below, the Court finds the ALJ's interpretation of the record before him was reasonable and, thus, Dr. Burkett's reviewing opinion at best presents an alternative interpretation of the medical evidence.

*See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's rational conclusion that must be upheld.).

Third, even if the Court were to probe deeper and consider whether Dr. Burkett's opinion highlights existing medical evidence that somehow renders the ALJ interpretation unreasonable, Dr. Burketts' findings and conclusory opinions do not substantially undermine the ALJ's interpretation of the record. Dr. Burkett opined that although Ms. Higgins improved after each surgery, "it was or is almost predictable the average spine surgery often FAILS after time[,] as is the case here." Tr. 578. However, the ALJ points to evidence that Ms. Higgins' symptoms improved after her February 2013 surgery and that she did not seek treatment related to her alleged cervical and lumbar impairments again until August 2014. Tr. 35-36, 531, 532-34. When she did seek treatment in late 2014, alleging osteoarthritis in her neck, back, hips and feet, the ALJ noted that Ms. Higgins displayed intact sensation and normal strength in all major muscle groups and full range of motion in her lower extremities. Tr. 36, 553. When Ms. Higgins again sought treatment in December 2014, alleging neck pain, numbness and tingling following an alleged slip and fall, the CT of her cervical spine showed no acute osseous abnormalities, mild degenerative changes and no foraminal stenosis. Tr. 36, 572. Dr. Burkett does not explain his opinion that Ms. Higgins' spine surgery "failed" and does not establish the ALJ's interpretation of the record, as indicating overall improvement after Ms. Higgins' February 2013 surgery, is unreasonable.

Dr. Burkett further opined that "after 5 spinal surgeries, ongoing radicular leg pain and C-6 radicular problems, ongoing pain and bladder and cauda equina syndrome, the claimant reasonably meets a 1.04 listing and worse [sic] case meets or equals 1.02 or 1.04 with both

credible cervical and lumbar problems." Tr. 578. Specifically, Dr. Burkett indicates Ms. Higgins meets Listing 1.04C and that even if she did not meet that Listing, with the added problems of the cervical spine with pain, decreased range of motion and radicular arm pain, she "could equal 1.04C or 1.02[.]" Tr. 579. A claimant whose impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P. Appendix 1, for the required twelve-month duration, is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). However, Dr. Burkett's conclusion that Ms. Higgins meets or could equal listed impairments is, in and of itself, of little relevance as this is a legal determination reserved for the ALJ. Moreover, beyond asserting this legal conclusion, Dr. Burkett fails to make specific medical findings establishing that Ms. Higgins' impairments meet or equal the criteria under either Listing 1.04C or 1.02.

Listing 1.04C states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: …
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

1.00B2b in turn states:

> (1) Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities….
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough

> or uneven surfaces, the inability to use standard public transportation, the
> inability to carry out routine ambulatory activities, such as shopping and
> banking, and the inability to climb a few steps at a reasonable pace with
> the use of a single hand rail. The ability to walk independently about
> one's home without the use of assistive devices does not, in and of itself,
> constitute effective ambulation.

Even assuming, without finding, that Ms. Higgins met all other requirements under Listing 1.04C, Dr. Burkett does not specifically find, much less cite to evidence, that Ms. Higgins experienced chronic nonradicular pain and weakness. Tr. 575-79. Moreover, substantial evidence supports the ALJ's conclusion that Ms. Higgins did not experienced chronic weakness or difficulty ambulating. Tr. 32. The record supports the ALJ's finding (in concluding Ms. Higgins did not meet Listing 1.04), that, following her alleged onset date, Ms. Higgins routinely displayed steady gait and, with few exceptions, normal strength in her extremities. Tr. 32 (citing Tr. 340-43, 345-53, 365-66, 373-74, 343-44, 513-15, 531, 535-50). There is no evidence in the record that Ms. Higgins required an assistive device to walk. Moreover, there is evidence, as noted by the ALJ, that Ms. Higgins took daily walks for exercise and was able to go shopping without assistance. Tr. 37 (citing Tr. 369). While Dr. Burkett states that "ineffective ambulation" is "present" he did not examine Ms. Higgins and fails to cite to any evidence in the record supporting that conclusion. Tr. 579. Thus, Dr. Burkett's opinion does not undermine the ALJ's determination that Ms. Higgins' impairments did not meet or equal listing 1.04C.

Listing 1.02 states:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by
> gross anatomical deformity (e.g., subluxation, contracture, bony or
> fibrous ankylosis, instability) and chronic joint pain and stiffness with
> signs of limitation of motion or other abnormal motion of the affected
> joint(s), and findings on appropriate medically acceptable imaging of
> joint space narrowing, bony destruction, or ankylosis of the affected
> joint(s). With: A. Involvement of one major peripheral weight-bearing
> joint (i.e., hip, knee, or ankle), resulting in inability to ambulate
> effectively, as defined in 1.00B2b; or B. Involvement of one major

peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.[5]

With respect to Listing 1.02A, as noted above, even assuming without finding that Ms. Higgins met all other requirements, the ALJ reasonably concluded that record did not show ineffective ambulation, and Dr. Burkett's conclusory opinion does not undermine that finding. Tr. 31. With respect to Listing 1.02B, Dr. Burkett's opinion does not specifically find, much less cite to any evidence, that Ms. Higgins' impairments resulted in an inability to perform fine and gross movements effectively. Tr. 575-79. Accordingly, Dr. Burkett's opinion also does not substantially undermine the ALJ's finding that Ms. Higgins did not meet the criteria of Listing 1.02.

Finally, Dr. Burkett opined that Ms. Higgins' cervical or lumbar impairments alone "might get her to" no more than a sedentary level RFC, "but in combination would reduce the RFC to less than sedentary with limited stand, walk, and lift" and that she had been "less than sedentary" from her alleged onset date. Tr. 578. However, Dr. Burkett's conclusion is based on the same evidence the ALJ reviewed in finding Ms. Higgins capable of light work with additional limitations. The ALJ's decision is supported by substantial evidence including the reviewing opinion of State agency doctor Minal Krishnamurthy, M.D., and the examining

---

[5] 1.00B2c states: "What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level."

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 8

opinions of Edwin Lamm, M.D., and Jack E. Maniscalco, M.D. Tr. 115, 345-53, 365-66. Thus, Dr. Burkett's opinion is at best an alternative reasonable interpretation of the evidence but fails to establish the ALJ's decision, based on the opinions of other examining and reviewing doctors' opinions and the same medical evidence reviewed by Dr. Burkett, is not supported by substantial evidence.

In sum, Ms. Higgins fails to establish error.

### *2. Paul Kornberg, M.D.*

Ms. Higgins contends the ALJ erred in failing to discuss Dr. Kornberg's examining opinion. Dkt. 11 at 6-7. On February 3, 2013, three days after her cervical spine surgery, Dr. Kornberg examined Ms. Higgins for the purpose of evaluating her rehabilitative needs upon discharge from the hospital. Tr. 384-386. Dr. Kornberg found Ms. Higgins could move from supine to sit with "max assist"; was "sit to supine dependent"; "scoot dependent"; could move from "sit to stand with modest assist"; could move from stand to sit with "min assist"; and could ambulate 70 feet with minimal assistance and the use of a roller walker. Tr. 385.

Ms. Higgins contends the ALJ was required to either account for Dr. Kornberg's opined limitations in the RFC or provide specific, legitimate reasons to discount the opinion. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). Rather, the ALJ must only explain why "significant probative evidence has been rejected." *Id.* Moreover, temporary limitations are insufficient to meet the durational requirement for a finding of disability. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term excuse

from work was not indicative of "claimant's long term functioning.").

Here, Dr. Kornberg's assessment was performed only three days after Ms. Higgins' spinal surgery for the sole purpose of assessing her post-surgical rehabilitative needs upon discharge from the hospital. Tr. 384-386. Dr. Kornberg's report does not indicate the immediate post-surgical limitations were permanent. *Id.* In fact, the evidence demonstrates the limitations assessed by Dr. Kornberg were not permanent as Ms. Higgins showed significant improvement just a few weeks later. Specifically, only two and a half weeks after surgery, Dr. Louis, noted that Ms. Higgins reported she was "doing quite well and is requiring no pain medication. [She] states her pre-operative upper and lower extremity symptoms have resolved. She has no new complaints. She is extremely pleased with her post-operative result." Tr. 35, 531. Moreover, on examination, Ms. Higgins demonstrated good gait and intact strength in her extremities. Tr. 35-36, 530-531. Although Dr. Louis instructed Ms. Higgins to return in one month unless new problems arose, there is no evidence Ms. Higgins sought any medical care until nearly a year later in January 2014. Tr. 36, 531, 535-550. Under the circumstances, Ms. Higgins fails to establish Dr. Kornberg's assessment was significant probative evidence which the ALJ harmfully erred in failing to address.

### 3. *Kenneth M. Louis, M.D.*

Ms. Higgins contends the ALJ erred in evaluating Dr. Louis' treating opinion. Dkt. 11 at 8-11. Specifically, Ms. Higgins contends the ALJ erred in giving some weight to Dr. Louis' opinion limiting her to light duty but failing to address his later findings that her kyphosis and stenosis were permanent, that her pre-existing condition was exacerbated by her initial fall, that she had been symptomatic since her fall, and his recommendation that she seek an opinion on possible surgical intervention. *Id.*

As noted above, the ALJ "need not discuss *all* evidence presented" to him or her but must only explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent*, 739 F.3d at 1394-95 (citation omitted) (emphasis in original). *Id.* Moreover, where a physician's report does not assign any specific limitations or opinions in relation to an ability to work, "the ALJ [does] not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *See also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *7 (Jul. 2, 1996) ("[t]he ALJ must consider all medical opinion evidence" and "[i]f the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") (emphasis added). Here, Dr. Louis does not opine that the findings Ms. Higgins points to impose any additional or different limitations from the limitation to light duty or that they conflict with the RFC. Accordingly, Ms. Higgins fails to establish the ALJ harmfully erred in failing to specifically address these findings.

The ALJ afforded some weight to Dr. Louis' opinion limiting Ms. Higgins to "light duty" noting that "the claimant's medical imaging and reports of an injury in late 2011 are consistent with a decline in her functional capacity approximate to her alleged onset date, which likely limited her to light work activities for a period after her injury in late 2011." Tr. 37. Moreover, the ALJ limited Ms. Higgins to light work with additional limitations in the RFC, and the VE testified that many of the jobs identified at steps four and five could be performed even if Ms. Higgins were limited to sedentary work. Tr. 32, 38, 70. Ms. Higgins does not argue that the limitation to light duty is inconsistent with the ALJ's RFC or the jobs identified at steps four and five and she fails to identify any other aspect of Dr. Louis' opinion that conflicts with the RFC.

*See Ludwig*, 681 F.3d at 1054 (the burden is on the party claiming error to demonstrate the error and that the error was harmful); *see Indep. Towers of Wash.*, 350 F.3d at 930 (the court "will not consider any claims that were not actually argued in appellant's opening brief"). Accordingly, Ms. Higgins fails to establish the ALJ harmfully erred in evaluating Dr. Louis' opinion.[6]

**B.    Ms. Higgins' Testimony**

The ALJ found the medical evidence of Ms. Higgins' underlying impairments might reasonably produce the symptoms alleged and did not find that Mr. Higgins was malingering. Tr. 26. Consequently, the ALJ was required to provide specific, clear and convincing reasons for rejecting Ms. Higgins' testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). If the ALJ's reasons for discounting a claimant's subjective symptom testimony are supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In evaluating a claimant's testimony an ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-

---

[6] Ms. Higgins also argues the ALJ erred in giving greater weight to the nonexamining opinion of Dr. Krishnamurthy than to Dr. Louis' later findings. Dkt. 11 at 10. However, Ms. Higgins fails to establish Dr. Louis' later findings are inconsistent either with Dr. Krishnamurthy's opinion or the RFC or that the ALJ harmfully erred in failing to address them. Ms. Higgins does not argue the ALJ erred in giving greater weight to Dr. Kristanamurthy's more detailed opinion than to Dr. Louis' opinion limiting her to light duty work. Dkt. 11 at 10. Accordingly, this argument also fails to establish harmful error.

59. The ALJ may also consider an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). Here, the ALJ gave several clear and convincing reasons for discounting Ms. Higgins' testimony.

The ALJ discounted Ms. Higgins' symptom testimony in part based on inconsistent statements regarding the nature and chronology of her symptoms. Tr. 34. Specifically, the ALJ notes that although Ms. Higgins testified that she stopped working in early 2012 because of nerve damage in her legs and the effects of an on-the-job neck injury in November 2011, on a visit to her neurological surgeon in February 2012, Ms. Higgins denied having any current lower back pain or symptoms in her lower extremities, with the exception of longstanding numbness in her right leg. *Id.*, Tr. 360-63. Furthermore, on examination she exhibited full strength in all muscle groups, normal range of motion in her lumbar spine, and negative straight leg raise bilaterally. *Id.* On examination in March 2012, Ms. Higgins also made no complaints regarding her lumbar spine or lower extremities and displayed intact strength in all of her extremities with good rapid successive movements. *Id.*, Tr. 359. Again, on examination in July 2012, Ms. Higgins made no complaints regarding her lumbar spine or lower extremities and demonstrated good range of motion in her lumbar spine as well as normal gait and balance, and full strength in her arms and legs. Tr. 34, 340-43. In sum, the record supports the ALJ's finding that, contrary to Ms. Higgins' testimony, she did not complain of significant lower extremity issues until many months after she stopped working.

The ALJ also notes that Ms. Higgins testified that her symptoms had not improved at all, even initially, following surgery. Tr. 36, 66. However, the ALJ notes that, following surgery in February 2013, Dr. Louis reported that "the patient is doing quite well and is requiring no pain

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 13

medication. She states her preoperative upper and lower extremity symptoms have resolved. She has no new complaints. She is extremely pleased with her post-operative results." Tr. 36, 531. The ALJ also notes that there is no documented evidence of any medical treatment or doctor visits until nearly a year later, in January 2014. *Id.* When presented with this evidence of improvement at the hearing, Ms. Higgins then acknowledged that her symptoms had, in fact, improved after the February 2013 surgery. Tr. 66-67. The ALJ reasonably found these inconsistent statements undermined Ms. Higgins' testimony regarding the nature and severity of her symptoms. *See Thomas*, 278 F.3d at 958-59; *and see, e.g., Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discounted the claimant's testimony on the grounds that "contrary to [the claimant's] claims of lack of improvement, Dr. Reaves reported that [the claimant's] mental symptoms improved with the use of medication.").

The ALJ also discounted Ms. Higgins' symptom testimony as inconsistent with the longitudinal medical record of her physical functioning as well as based on inconsistencies in her statements and presentation to various medical providers. *See Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Smolen,* 80 F.3d at 1284 (in evaluating a claimant's testimony the ALJ may consider observations of physicians regarding the nature of symptoms). The ALJ noted that, in mid-January 2013, although Ms. Higgins report the recent onset of weakness in her lower extremities, on examination she exhibited steady gait, intact tandem walking, and normal power in all her extremities. Tr. 36, 513-16. On January 20, 2013, in preparation for cervical spinal surgery, Ms. Higgins initially exhibited full strength throughout her upper and lower extremities and a fluctuating degree of light touch sensation. Tr. 36, 373-74. On examination later that day Ms. Higgins reported the onset of lower extremity

paresthesia in the prior two weeks but denied any weakness and exhibited normal motor signs in her upper and lower extremities and normal range of motion in the back and musculoskeletal system. Tr. 36, 423-34. However, during another examination that same day, Ms. Higgins alleged that she had been experiencing weakness and numbness in all four extremities for "a couple months" and the provider noted weakness in all of her extremities, which he attributed to poor effort. Tr. 36, 381-33. The ALJ also noted that the record shows shortly thereafter Ms. Higgins was observed by a nurse to be ambulating normally from the bathroom but that she began to limp when she noticed the nurse watching. Tr. 36, 392. The ALJ reasonably concluded these numerous inconsistencies between Ms. Higgins' symptom complaints and the medical evidence as well as inconsistencies between her testimony and conduct called into question the severity of the limitations Ms. Higgins was alleging. *See also Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2009) (finding ALJ gave several clear and specific reasons for finding claimant to be not fully incredible, including evaluating physician's "observation that [claimant] showed 'poor effort' "); *see Osenbrock v. Apfel*, 240 F.3d 1157 (9th Cir. 2001) (ALJ may consider evidence of self-limiting behavior in discounting a claimant's testimony).

At the hearing, Ms. Higgins also reported experiencing frequent migraine headaches approximately five days a week. Tr. 33, 62-63. The ALJ reasonably discounted Ms. Higgins' testimony as to the severity of her headaches as inconsistent with the medical record, including Ms. Higgins' own reports to medical providers, as well as evidence that her migraines were controlled with medication. *See Carmickle*, 533 F.3d at 1162 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Thomas*, 278 F.3d at 958-59; *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility

for SSI benefits."); 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (in evaluating symptom testimony, ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms"). Specifically, the ALJ noted that: treatment records between Februrary 2012 and August 2012 did not include references to headaches; in November 2012 Ms. Higgins reported having only "occasional" headaches; during medical care in January 2013 repeatedly denied headaches; and treatment notes from January 2014 to August 2014 indicate she continued to use Fiorcet to control her headaches. Tr. 36 (citing Tr. 340-46, 360-63, 365, 382, 401, 513); *see id.*; *Orn*, 495 F.3d 625 (in evaluating claimant's testimony, ALJ may also consider an unexplained or inadequately explained failure to seek treatment).

In sum, the ALJ did not err in discounting Ms. Higgins' symptom testimony.[7]

## C. RFC and Steps Four and Five

Ms. Higgins contends the ALJ erred in finding she could perform past relevant work at steps four as well as other jobs in the national economy at step five. Dkt. 11 at 11-13.

At step four of the sequential evaluation process, the ALJ must evaluate the claimant's residual functional capacity (RFC) as well as the physical and mental demands of the claimant's past relevant work and determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the claimant is able to perform her past relevant work, she is

---

[7] The ALJ also gave other reasons for discounting Ms. Higgins' testimony. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting Ms. Higgins' syptom testimony. *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason among other reasons is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 16

not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the claimant can perform other work, she is not disabled; if the opposite is true, she is disabled. *Id.*

Ms. Higgins contends the ALJ erred in relying on the vocational expert's (VE's) testimony that she could perform other work in the national economy as a telephone information clerk. Dkt. 11 at 13. Ms. Higgins contends the VE's testimony that she could work as a telephone information clerk (based on a hypothetical limiting her occasional reaching) conflicts with the Dictionary of Occupational Titles (DOT) job description which requires frequent reaching. *Id.* "In determining whether an applicant is entitled to disability benefits, an ALJ may consult a series of sources, including a VE and the DOT." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). "If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). However, an ALJ's duty to inquire about a conflict between the DOT and a VE's testimony is fact-dependent and is only required when it is either obviously or apparently contrary to the DOT—the obligation does not extend to unlikely situations or circumstances. *Id.* at 808. In fact, when contemplating the exact issue of whether frequent reaching would include overhead reaching, the Ninth Circuit examined "whether overhead reaching is such a common and obvious part of cashiering [(the job at issue in the case)], that the ALJ should have recognized a conflict and questioned the expert more closely before concluding that a Plaintiff with overhead reaching limitation in one arm could work as a

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 17

cashier." *Id.* at 807. The Court determined the conflict was not obvious and that no further inquiry was required. *Id.* at 809.

Here, the ALJ included a limitation to occasional overhead reaching in the RFC and in the hypothetical posed to the VE. Tr. 32, 70. The VE did not acknowledge any conflict with the DOT and testified Ms. Higgins could work as a telephone information clerk. Tr. 72. The DOT describes the job of telephone information clerk as follows: "Answers telephone calls from customers requesting current stock quotations and provides information posted on electronic quote board. Relays calls to REGISTERED REPRESENTATIVE (financial) 250.257-018 as requested by customer. May call customers to inform them of stock quotations." DOT 237.367-046. As in *Gutierrez*, none of the duties of this job appear to require overhead reaching thereby making the conflict between the VE's testimony and the DOT so apparent or obvious that the ALJ was required to ask additional questions. *Gutierrez*, 844 F.3d at 808; *see also Dickmeier v. Comm'r, Soc. Sec. Admin.*, 2015 WL 8514188, at *5 (D. Or. Dec. 11, 2015) (finding that the DOT descriptions of the jobs identified by the VE requiring frequent reaching are compatible with the plaintiff's occasional bilateral overhead reaching limitation); *Frias v. Colvin*, 2015 WL 8492453, at *7 (C.D. Cal. Dec. 10, 2015) ("[N]o conflict between the ALJ's RFC limitation of 'occasional overhead reaching bilaterally' and the DOT requirement of 'frequent reaching.'").

Under the circumstances, the ALJ was entitled to rely on the VE's experience to account for the particular job requirements of a telephone information clerk. SSR 00–04P, 2000 WL 1898704. Although Ms. Higgins argues for a different interpretation, when the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if they are supported by inferences reasonably drawn from the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Accordingly, the ALJ properly determined at step five that Ms.

Higgins could perform work as a telephone information clerk. Tr. 39. Because the ALJ properly found Ms. Higgins could perform other work in the national economy, the Court need not address whether the ALJ also properly determined she could perform her past relevant work.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 13th day of September, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge